NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-135                                          Appeals Court


KELLY McISAAC  vs.  TIM PORTER.


No. 16-P-135.

Suffolk.     October 14, 2016. - December 9, 2016.

Present:  Vuono, Massing, & Sacks, JJ.


Abuse Prevention.  Protective Order.  Evidence, Cross-
    examination.  Words, "Abuse."


Complaint for protection from abuse filed in the Suffolk
Division of the Probate and Family Court Department on January
21, 2014.

A motion to extend an abuse prevention order was heard by
Megan Christopher, J.


Joseph P. Calandrelli for the defendant.
Adam J. Malinowski for the plaintiff.


SACKS, J.  The defendant appeals from a Probate and Family

Court order making permanent a G. L. c. 209A abuse prevention

order (209A order) issued one year earlier.  He argues that the

judge erred by (1) making the order permanent based solely upon

the plaintiff's fear arising out of a past incident of serious

physical abuse, without any finding that the plaintiff

reasonably feared imminent serious physical harm; and (2) limiting defense counsel's ability to cross-examine the plaintiff at the renewal hearing.  We conclude that the judge properly extended the order, because the statute authorizes a judge to issue or to extend a 209A order where, as here, the judge finds that the victim is still reasonably suffering fear due to a past incident of serious physical abuse, regardless of whether the victim also reasonably fears imminent serious physical harm.[1]  We also discern no abuse of discretion in the judge's limitation on defense counsel's cross-examination.  We therefore affirm.

Background.  In late January, 2014, the plaintiff successfully applied for the 209A order.  We recount the circumstances as stated in her supporting affidavit.  She and the defendant had dated for about six years and had lived together for about six months, until early January, 2014.  The defendant was "much bigger" than she was, weighing 270 pounds and standing just under six feet tall.  The defendant had told her he had depression; the defendant drank alcohol to escape, causing him to become aggressive and violent.

His violence toward the plaintiff had escalated in the few months prior to her application for the 209A order.  In the

---

[1] The judge here did not explicitly address whether the victim also harbored this latter fear, so neither do we.

summer of 2013, the defendant dragged her across the room by her feet to prevent her from leaving their residence.  In August, 2013, she and the defendant had a disagreement during which he grabbed her eyeglasses from her face and broke them in half.  In October, 2013, the defendant grabbed her arm aggressively, causing her pain.  In November, 2013, the defendant choked her with his hands and forearm, causing bruises on her collar bone and arms.

On the night of December 23, into December 24, 2013, the plaintiff woke the defendant when he was drunk.  He became angry, "lunged" at her, put his hands around her neck and choked her, stuck his fingers down her throat, and punched and hit her in her sides and genitals.  The defendant hit her with an open hand at least fifteen times.  He sat on her while holding her neck and asked, "Do you want to die tonight?"  When she tried to telephone for help, the defendant grabbed her telephone away from her.  When she locked herself in the bathroom, the defendant broke down the door.  She tried to leave but the defendant held her by her neck against the wall.  She had bruises on her back, sides, chest, arms, and face.  Photographs of her injuries were attached to her affidavit.[2]

---

[2] The photographs were viewed by the judge at the January, 2015, renewal hearing, but the parties have not included them in the materials submitted on appeal.

In late January, 2014, the plaintiff applied for the 209A order. The order was granted ex parte and subsequently extended twice, with the defendant's agreement, until January, 2015, at which time the plaintiff requested that the order be made permanent.

The record of the January, 2015, renewal hearing discloses that as a result of the December, 2013, incident, the defendant had been charged with assault and battery and received a continuance without a finding (CWOF) with a five-year probationary period. The judge characterized this disposition as "something that [she did not] see very often." The defendant had thus far complied with the terms of his probation, which included a requirement that he not contact the plaintiff. The matter of restitution to the plaintiff for her medical expenses had not yet been resolved, with at least one additional court hearing expected.

The plaintiff testified that although the defendant had not violated the 209A order, she remained scared and in fear of him and thus desired an extra measure of protection for her safety. She did not trust the defendant and found it difficult to be in the court room with him at the hearing. They had attended the same out-of-State college, were in the same alumni network, had mutual ties and friends, and "r[a]n in some of the same circles." The plaintiff testified that she was "scared to be in

the city . . . if [she] did happen to bump into him."  The plaintiff was on the college's Boston alumni board, and the defendant's father was on the college's board of trustees. Although the defendant himself had not come to any alumni events that the plaintiff had attended, his name was on the list for one such event, and she testified that, as a "precaution, [she] had [her] parents be around the corner [at] every event."

Asked by the judge what she thought would happen if she were to encounter the defendant in the future, the plaintiff stated, "Well, last time he almost killed me, so."  She said, "And at the end of the day, it's a small city.  And I think I do have [reason] to be scared of him, because of what he did do." The plaintiff added that "just a year ago, something horrendous happened in [her] life."

On cross-examination, the plaintiff acknowledged that the evening after the December, 2013, assault, she had returned with her parents to the residence where she lived with the defendant, and the four spent time together.  She also had gone with the defendant to his family's house for some part of the following week.  Defense counsel suggested to the judge that before the 209A order issued in January, 2014, the defendant had moved out of the residence at the plaintiff's request, yet she had continued to send him numerous text messages, one of which she acknowledged at the hearing.

At the close of the hearing, the judge ruled that "based on the affidavit, the photographs, the criminal record, and the testimony today, I find that there was a very serious incident, and that it was part of the history.  And I will issue a permanent order."  The defendant appealed.

Discussion.  1.  Basis for extension order.  The defendant argues that the order was improperly based only on past abuse, without any finding that the plaintiff currently had a reasonable fear of imminent serious physical harm.  For this the defendant relies on Dollan v. Dollan, 55 Mass. App. Ct. 905, 906 (2002), which said on the facts of that case that the "issuance of this c. 209A order on allegations of past abuse alone, without a fear of imminent physical harm, was inconsistent with the language of G. L. c. 209A."  But Dollan involved an order aimed at a different type of abuse than was at issue here.  General Laws c. 209A, § 1, as appearing in St. 1990, c. 403, § 2, recognizes three types of abuse:  "(a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; and (c) causing another to engage involuntarily in sexual relations by force, threat or duress."  In Dollan we held "that G. L. c. 209A, § 1(b), focuses on preventing imminent serious physical harm, not merely responding to past abuse," and so an order to prevent imminent

serious physical harm could not enter absent a finding of fear of that type of abuse. 55 Mass. App. Ct. at 906.

Here, in contrast, the plaintiff sought protection because the defendant already had caused actual physical harm to her, which constitutes abuse as defined in G. L. c. 209A, § 1(a). We recognized this distinction in Callahan v. Callahan, 85 Mass. App. Ct. 369, 373-374 (2014). There we said that where the victim already had been subject to physical harm, "the 'abuse' is the physical harm caused, and a judge may reasonably conclude that there is a continued need for [an] order because the damage resulting from that physical harm affects the victim even when further physical attack is not reasonably imminent." Id. at 374. See Vittone v. Clairmont, 64 Mass. App. Ct. 479, 489 (2005) (some wounds so traumatic that passage of time alone does not mitigate victim's fear of perpetrator). "[A]buse occasioned by physical harm may cause wounds that produce long-lasting fear in the victim without new incitements." Callahan, supra at 377.

Where there has been actual physical "abuse" within the meaning of G. L. c. 209A, § 1(a), and the victim is still "suffering from" that abuse in that the victim reasonably remains in fear of the abuser, the victim "may file a complaint in the court requesting protection from such abuse." G. L. c. 209A, § 3, as appearing in St. 1990, c. 403, § 3. See Dollan, supra ("Language in § 3 also suggests that c. 209A was

designed to allow persons presently 'suffering' from abuse to seek relief").  And because "'[a]buse' has the same statutory definition in the context of initial, extended, and permanent orders," a victim who still reasonably suffers fear based on past physical abuse may seek to extend a 209A order or to make it permanent.  Callahan, supra at 373, quoting from Vittone, supra at 485.

Thus, under Callahan, an order may issue to protect a victim from the continuing impact of past violence.  More specifically:

> "[T]he failure of the plaintiff to have an objectively reasonable fear of imminent serious physical harm does not by itself preclude extension of an abuse prevention order.  Faced with an extension request in such a circumstance, the judge must make a discerning appraisal of the continued need for an abuse prevention order to protect the plaintiff from the impact of the violence already inflicted.  The judge must consider the totality of the parties' relationship and the legislative purpose of preserving 'the fundamental human right to be protected from the devastating impact of family violence.'"

Callahan, supra at 374, quoting from Iamele v. Asselin, 444 Mass. 734, 740 (2005).  In Callahan, supra, we upheld extension of the order even though the defendant was incarcerated at the time of the extension.  The fact that the defendant here was at liberty on probation at the time of the extension, if anything, heightens the need to protect the victim from the impact of the violence already inflicted.

Here, the judge considered the plaintiff's affidavit describing the incidents that led to the issuance of the order; the photographs of her injuries; her testimony about her continuing fear of the defendant and the reasons for that fear, notwithstanding that the defendant had complied with the 209A order to date; the defendant's criminal record, including his CWOF and five-year probationary term resulting from serious violence against the plaintiff, which the judge thought telling; and the plaintiff's testimony that she felt uncomfortable being in the court room with the defendant and that the matter of restitution required a further hearing in the criminal case. The judge found that the assault "was a very serious incident" and confirmed that the plaintiff sought the extension because "what happened in that incident was so profound that [the plaintiff needed] to have [the order made] permanent."  The defendant has not shown any error of law or abuse of discretion in the decision to make the order permanent.[3]

2. Limitation on cross-examination. The defendant argues that the judge abused her discretion in limiting counsel's ability to cross-examine the plaintiff at the renewal hearing. Counsel sought to show that the plaintiff was not currently in

_____

[3] On appeal the defendant challenges not the duration of the extension (i.e., making it permanent) but only the judge's authority to extend the order at all, absent a finding that the plaintiff reasonably feared imminent serious physical harm.

fear because she had continued to contact the defendant between the time of the violent incident in December, 2013, and the issuance of the 209A order in late January, 2014.  In response to the judge's statement that "[w]hatever happened in this case, in January of 2014, is not being re-litigated," counsel stated:

> "I'm not litigating that.  But what I am telling you in regard to whether there's a basis for a restraining order is that if someone is in fear, they wouldn't be texting all the time the person that they are fearing.  They wouldn't be sending . . . sexual[ly] explicit videos to him so he would call."

The judge replied, "Those things happen.  The end of a relationship is not always clean margins."  Counsel persisted in questioning the plaintiff about text messages she had sent the defendant in January, 2014, arguing that such evidence was relevant to "whether she is truly in fear . . . moving forward." Repeating that she would not permit the defendant to relitigate the issuance of the order in January of 2014, the judge declined the defendant's request to introduce in evidence the plaintiff's text messages to the defendant during that month.

We see no abuse of discretion.  First, although "[t]he judge is to consider the basis for the initial order in evaluating the risk of future abuse should the existing order expire, . . . [t]his does not mean that the restrained party may challenge the evidence underlying the initial order."  Iamele, 444 Mass. at 740.  Second, the judge properly could determine

that the plaintiff's ambivalent feelings before she resolved to seek the 209A order in January, 2014, had little or no relevance to whether the plaintiff reasonably remained in fear of the defendant at the time of the renewal hearing in January, 2015. A judge in a c. 209A proceeding "may place limits on cross-examination if warranted by the circumstances." Quinn v. Gjoni, 89 Mass. App. Ct. 408, 413 n.11 (2016), and cases cited.

Order dated January 26, 2015, affirmed.