On November 19, 2013, plaintiff A.C. obtained an ex parte abuse prevention order under G. L. c. 209A against defendant J.C. On December 3, 2013, after a hearing, a judge of the District Court extended the order until November 19, 2014. Another hearing before a second judge, of which there is no contemporaneous record due to an equipment malfunction, occurred on that later date, and the order was extended for three years.[2] J.C. filed a timely notice of appeal of the three-year extension, but his appeal was dismissed by the second judge for failure to timely reconstruct the record pursuant to Mass. R. A. P. 8 (c), as amended, 378 Mass. 932 (1979). A prior panel of this court, in a memorandum pursuant to our rule 1:28, vacated the order dismissing the appeal. On remand, the second judge, after submissions by the parties and a hearing, recreated the record. While recreation proceedings were ongoing, J.C. filed a motion in District Court to recuse the second judge, which he denied. J.C. then appealed the order denying his recusal motion. We must decide whether the three-year extension and the denial of J.C.'s motion to recuse were proper.
The reconstructed record shows the following. The parties were undergoing divorce proceedings and had children. A.C. testified that, between July of 2013 and the issuance of the ex parte order, J.C. (1) grabbed A.C.'s face in a restaurant, (2) put his genitals on her face, hit her, and called her a repressed German, (3) did not allow A.C. to leave the house and told her he could smash her face into "a thousand pieces," and (4) got between her legs, held her wrists, and said, "I love to do this to you." A.C. also testified that, at unspecified times, J.C. had assaulted her, pushed her, and humped her, sometimes leaving bruises. She testified that, in November of 2013, she was afraid of J.C.
A.C. did not testify to any acts of physical violence after the issuance and the first extension of the abuse prevention order, but did testify to several instances in which J.C. violated a provision of the order that required him to stay fifty feet away from her. She further testified that she continued to remain in fear of J.C., which fear the second judge found to be reasonable.
J.C. first argues that the delay between his notice of appeal in November of 2014 and the second judge's reconstruction of the record in April of 2017 has rendered the reconstructed record "wholly inadequate for the purposes of this appeal" because it prevents him from "arguing the insufficiency of the restraining order." J.C. can claim no prejudice from the delay here, for as his brief indicates, and as counsel made clear at oral argument, he does not challenge the factual accuracy of the reconstructed record. J.C. also argues that the reconstructed record is inadequate because the second judge summarized the evidence without making any express credibility findings. We disagree. It is clear that the second judge's three-year extension of the order was premised on a finding that A.C.'s testimony was credible.
J.C. next argues that the second judge applied the wrong standard by finding only that A.C.'s "fear of the defendant continued to be reasonable," and was instead required to find that A.C. was in fear of imminent serious physical harm. This is incorrect. "[P]lacing another in fear of imminent serious physical harm" is one of three ways a defendant can commit abuse under G. L. c. 209A, § 1, along with "attempting to cause or causing physical harm" and "causing another to engage involuntarily in sexual relations by force, threat or duress." A person "suffering from" abuse can then obtain an abuse prevention order and extensions thereof under G. L. c. 209A, § 3. Plaintiffs who have suffered abuse in the form of physical harm can obtain abuse prevention orders when they remain in reasonable fear of their abuser. See McIsaac v. Porter, 90 Mass. App. Ct. 730, 733-734 (2016). Here, A.C. testified to acts by J.C. that would constitute causing physical harm, such as hitting her, pushing her, and causing her to bruise.[3] As such, she did not need to demonstrate fear of imminent serious physical harm.
J.C. also argues that the second judge erred in extending the order for three years because A.C. did not demonstrate that she reasonably feared him. In support of his conclusion, J.C. notes that A.C. testified to no instances of abuse following the issuance of the ex parte order, that all alleged instances of abuse occurred while the parties were cohabitating, which they no longer were, and that the parties had sexual relations one time in August or September of 2013. We review the second judge's decision to extend the order for abuse of discretion. See Crenshaw v. Macklin, 430 Mass. 633, 635 (2000).
To begin, the statute is explicit that "[t]he fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order." G. L. c. 209A, § 3. Instead, the judge is to assess the "totality of the circumstances," including "the defendant's violation of protective orders" and "ongoing child custody or other litigation that engenders or is likely to engender hostility." Iamele v. Asselin, 444 Mass. 734, 740 (2005). Here, in addition to A.C.'s testimony that she remained in fear of J.C., there was evidence that J.C. violated the order several times (albeit not by abusing A.C.), sometimes in ways that involved the parties' children, and that the parties had ongoing divorce proceedings that likely were hostile.
Furthermore, the second judge was not required to conclude that A.C. did not remain in reasonable fear of J.C. because he had abused her only when they lived together. Indeed, we have held that reasonable fear of even an incarcerated defendant can suffice to extend an abuse prevention order. See Callahan v. Callahan, 85 Mass. App. Ct. 369, 374 (2014). And the fact that the parties had one consensual sexual encounter several months before the ex parte order issued, if this is relevant at all, does not alter the calculus. The second judge's finding is well supported that A.C. remained in reasonable fear of J.C. and it was within the second judge's discretion to extend the order for three years.[4]
We turn finally to the second judge's denial of J.C.'s motion to recuse. J.C. argues that the second judge, who granted the three-year extension and dismissed J.C.'s appeal, is or appears to be biased against him because, according to J.C.: (1) the three-year extension was unwarranted, (2) a prior panel of this court vacated the second judge's dismissal of J.C's appeal, the filing of which the panel deemed to be frivolous, (3) the second judge granted A.C. sixty days to file a counterstatement of the record when the rules provide for ten, and (4) J.C. has suffered emotional and financial costs from litigation.
A judge facing a motion to recuse must determine whether he or she can decide the case fairly and impartially, and also whether, as an objective matter, his or her involvement in the case creates the appearance of partiality. See Lena v. Commonwealth, 369 Mass. 571, 575 (1976), quoting S.J.C. Rule 3:25, Canon 3 (C) (1) (a), 359 Mass. 841 (1972) ("Faced, then, with a question of his capacity to rule fairly, the judge was to consult first his own emotions and conscience. If he passed the internal test of freedom from disabling prejudice, he must next attempt an objective appraisal of whether this was 'a proceeding in which his impartiality might reasonably be questioned' "). We review for abuse of discretion. See Commonwealth v. Morgan RV Resorts, LLC, 84 Mass. App. Ct. 1, 9 (2013).
It was not an abuse of discretion for the second judge to deny J.C.'s motion to recuse. We take J.C.'s arguments in turn. The first argument fails because, as discussed above, the three-year extension was proper. The second argument also fails. Obviously, a judge is not required to recuse himself simply because he was reversed on appeal. This, presumably, is why J.C. asserts without any basis that the prior panel found A.C.'s motion to dismiss the appeal "frivolous," and suggests that allowing a frivolous motion renders a judge partial or apparently so. Although we cannot agree that every erroneous allowance of a frivolous motion creates an appearance of partiality, far from finding the motion frivolous, the prior panel did not even hold that A.C.'s initial filing of the motion was unmeritorious: it held instead that the second judge erred by allowing A.C.'s motion because, after it was filed, J.C. cured any noncompliance with the rules governing assembly and transmission of the record. See Mass. R. A. P. 10 (c), as amended, 417 Mass. 1602 (1994). Moreover, as the second judge noted in the hearing on the motion to recuse, in J.C.'s opposition to A.C.'s motion to dismiss the appeal, he did not even argue that he had a right to cure noncompliance with those rules. Even though the second judge was wrong, his failure to appreciate an argument not made by any party does not make him partial or apparently so.
J.C.'s third argument is equally unpersuasive. While Mass. R. A. P. 8 (c) grants an appellee ten days to respond to an appellant's statement of the record, the prior panel ordered the second judge to give A.C. a "reasonable period of time to present her own statement of the evidence." According to the second judge, he gave A.C. sixty days to file her response because J.C. had taken ninety days to file his initial statement. This was a reasonable interpretation of the prior panel's order, and obeying the order of a higher court does not render a judge partial or apparently so. Finally, while litigation can have financial and emotional costs, those costs have no bearing here on the second judge's partiality or appearance thereof.
The November 19, 2014, order extending the abuse prevention order for three years, and the order denying J.C.'s motion to recuse, are affirmed.
So ordered.
Affirmed.

The order has since become permanent, but that extension is not before us.

Of course, there is evidence in the record that, at some points in time, A.C. feared imminent serious physical harm as well.

To the extent J.C. argues that a three-year extension is legally impermissible, because this is an extension of a one-year order, he is incorrect. See MacDonald v. Caruso, 467 Mass. 382, 386 (2014) ("A temporary abuse prevention order may issue ex parte for up to ten court business days where a plaintiff shows a 'substantial likelihood of immediate danger of abuse.' G. L. c. 209A, § 4. After hearing, the temporary order may be extended for no more than one year if the plaintiff proves, by a preponderance of the evidence, that the defendant has caused or attempted to cause physical harm, committed a sexual assault, or placed the plaintiff in reasonable fear of imminent serious physical harm.... On or about the date the initial order expires, the plaintiff may seek to extend the duration of the order 'for any additional time necessary to protect the plaintiff' or obtain a permanent order. G. L. c. 209A, § 3").