NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-418

H.A.[1]

vs.

A.R.A.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from the issuance of an abuse prevention order pursuant to G. L. c. 209A, § 3 (209A order). He argues that there was insufficient evidence that he placed the plaintiff, his daughter,[2] "in fear of imminent serious physical harm," G. L. c. 209A, § 1 (b).  The judge heard and credited the plaintiff's testimony about the defendant's physical and mental abuse of her and her fear of him.  Thus, the evidence sufficed to meet the standard, and we affirm.

Background.  Because the plaintiff was under the age of eighteen, her mother, who is the defendant's ex-wife, filed the complaint for protection from abuse on her behalf.  We focus on

---

[1] On behalf of the minor child, P.F.A.

[2] This action was brought on the daughter's behalf by her mother. We use "plaintiff" throughout this memorandum and order to refer to the daughter.

the evidence at the hearing after notice, at which the plaintiff and the defendant testified.

When the judge asked the plaintiff why she wanted a 209A order prohibiting the defendant from contacting her, she replied, "Because . . . he has hurt me over and over again ever since I was young, and it's brought a lot of stress and fear into my life, and going forward I would feel a lot safer in the world if he had no access to me."  Asked by the judge what she meant by the defendant's hurting her, the plaintiff replied, "He physically and sexually and verbally and mentally abused me for years."  The plaintiff testified that on multiple occasions the defendant struck her using his hand, a belt, the belt buckle, or a clothes hanger, causing "very much" pain and redness to her "entire backside," her arms, and several times to her head.  The defendant caused bruises which the plaintiff covered by wearing long sleeves and long pants even during the summer.  The plaintiff also testified that the defendant disciplined her by forcing her to perform exercises for long periods of time.

The plaintiff's account was corroborated by the testimony of her brother and her mother, who testified that they saw the defendant impose military-style punishments on the plaintiff, forcing her to hold a "plank" position for ten minutes or more. The brother testified that several years previously he saw the defendant shove the plaintiff and smash her hand, and as a

2

result the brother called the police.[3]  The brother and mother also testified that the defendant disciplined the plaintiff by making her lie in bed with him and "spooning" her tightly.

The defendant testified, denying that he meted out corporal punishment on the plaintiff or "spooned" her tightly.  He admitted that once when the plaintiff was twelve years old and "spitted out disrespectful cussing comments back" at him, he spanked her on her "butt."  Asked about the occasion when the plaintiff's brother called the police, the defendant said that the plaintiff had been blocking a doorway and he "passed over gently and had to nudge her out of [his] way"; then the plaintiff "slugged" him with a "closed fist," and so, "recognizing her disrespect," the defendant knocked food out of the plaintiff's hand but did not make contact with her body.  The defendant testified that because his ex-wife had told him that the plaintiff had nightmares from thinking that he would harm her, he voluntarily stayed out of the plaintiff's life for three years.  On one occasion when the defendant was outside the plaintiff's home, he saw her become "frantic" and have a "panic attack."

---

[3] Questioned by the judge, the brother testified that there should be a police report on record about that incident.

3

In issuing the 209A order, the judge concluded that there was "sufficient evidence of fear and physical abuse by a preponderance of the evidence."

Discussion. To support issuance of the 209A order, the plaintiff bore the burden to prove by a preponderance of the evidence that she was suffering from "abuse," which is defined by G. L. c. 209A, § 1 (b), to include "placing another in fear of imminent serious physical harm."[4] To meet that standard under § 1 (b), the plaintiff was required to satisfy both a subjective and an objective standard: that she was currently in fear of imminent serious physical harm, and that her fear was reasonable. See Iamele v. Asselin, 444 Mass. 734, 737 (2005); Yahna Y. v. Sylvester S., 97 Mass. App. Ct. 184, 186 (2020). In considering whether the plaintiff met her burden, we accord "the utmost deference" to the credibility determinations of the judge who "heard the testimony of the parties . . . [and] observed their demeanor" (citation omitted). Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 664 (2020).

The defendant argues that the plaintiff failed to prove three things: (1) that her fear was of harm that was

---

[4] The statute defines "[a]buse" as "(a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; [or] (c) causing another to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1.

4

"imminent," G. L. c. 209A, § 1 (b); (2) that her fear was "reasonable," Iamele, 444 Mass. at 737; and (3) that the extension of the 209A order was "reasonably necessary" to protect her from abuse, G. L. c. 209A, § 3. We consider each argument in turn.

First, as to whether the victim's fear was of serious physical harm that was "imminent," the judge credited the testimony of the plaintiff, her brother, and her mother that "some form of physical abuse or mental abuse occurred."[5] As a result of that abuse, the judge found by a preponderance of the evidence that the plaintiff was "in imminent fear of serious bodily harm."[6] See McIsaac v. Porter, 90 Mass. App. Ct. 730, 734 (2016) ("a victim who still reasonably suffers fear based on past physical abuse may seek to extend a 209A order or to make it permanent"). See also Vera V. v. Seymour S., 98 Mass. App. Ct. 315, 318 n.6 (2020).

---

[5] The judge noted that there were "allegations of some other abuse," but did not explicitly either credit or discredit the plaintiff's testimony that the defendant had "sexually" abused her. In those circumstances, we do not reach the question whether the plaintiff proved that the defendant caused her "to engage involuntarily in sexual relations by force, threat or duress," G. L. c. 209A, § 1 (c). Under § 1 (c), the plaintiff would not be required to prove that a future physical attack was reasonably imminent. See Yahna Y., 97 Mass. App. Ct. at 187.
[6] The defendant has not argued, here or in the trial court, that the judge should have stated the standard as requiring that it is the harm that must be imminent, not the fear. We discern no substantial risk of a miscarriage of justice. See Commonwealth v. Gupta, 84 Mass. App. Ct. 682, 686 (2014).

5

The defendant argues that, even if he abused the plaintiff in the past, that abuse was not recent enough to support the issuance of a 209A order. He contends that because he had not seen the plaintiff in three years, during which she alleged no abuse, the plaintiff could not prove that any harm from him was imminent. However, "[t]he infliction of some wounds may be so traumatic that the passage of time alone does not mitigate the victim's fear of the perpetrator." Vittone v. Clairmont, 64 Mass. App. Ct. 479, 489 (2005). The evidence permitted the judge to find that "the plaintiff was still suffering from that abuse, and that [she] reasonably remain[ed] in fear of [the defendant]" (quotations omitted). Yahna Y., 97 Mass. App. Ct. at 187, quoting McIsaac, 90 Mass. App. Ct. 733-734.[7]

The defendant's second claim is that the plaintiff did not prove that her fear was reasonable, rather than merely a "generalized apprehension" like those found insufficient in cases such as Szymkowski v. Szymkowski, 57 Mass. App. 284, 287 (2003), and Dollan v. Dollan, 55 Mass. App. Ct. 905, 906 (2002). Based on the plaintiff's testimony that she was in fear, which the judge credited, we conclude that the plaintiff met the

---

[7] Indeed, even if a 209A order had been in place during those three years, the mere passage of time would not negate the need for a 209A order. G. L. c. 209A, § 3 ("The fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order"). See Iamele, 444 Mass. at 738.

6

subjective portion of the standard, Iamele, 444 Mass. at 737. Indeed, the defendant himself testified that his presence caused the plaintiff to become "frantic" and have a "panic attack." As to the objective portion of the standard, from the plaintiff's testimony about the abuse she suffered at the hands of the defendant and from her brother's testimony that "[e]veryone" in the family was in fear of the defendant, the judge had ample basis to conclude that the plaintiff's fear was reasonable.

Finally, the defendant argues that the plaintiff did not prove that the 209A order was "reasonably necessary" to protect her, G. L. c. 209A, § 3. That section provides that at the extension hearing the judge "shall determine whether or not to extend the order for any additional time reasonably necessary to protect the plaintiff" (emphasis added). G. L. c. 209A, § 3. The Supreme Judicial Court has held that the words "reasonably necessary" in § 3 do not change the standard for issuing a 209A order; rather, they modify the words "additional time," and thus create a temporal standard. Iamele, 444 Mass. at 737. "[T]he 'reasonably necessary' language does not address the criteria a plaintiff must show in order to obtain an extension, but rather the duration of such an extension once it is determined that an extension is justified." Id. at 738. The duration of the extension here was one year, which was certainly reasonable. See Moreno v. Naranjo, 465 Mass. 1001, 1002 n.2 (2013) (noting

that trial court guidelines "strongly suggest" that 209A order after notice "should be for a minimum of one year").  See also Guidelines for Judicial Practice:  Abuse Prevention Proceedings § 6.02 & commentary (2021).

Order entered December 24,
    2021, affirmed.

By the Court (Neyman, Grant &
    Hershfang, JJ.[8]),

*Joseph F. Stanton*

Clerk

Entered:  May 24, 2023.

---

[8] The panelists are listed in order of seniority.