NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-20                                           Appeals Court


R.S.  vs.  A.P.B.


No. 18-P-20.

Essex.     March 4, 2019. - May 28, 2019.

Present:  Wolohojian, Milkey, & Blake, JJ.


Harassment Prevention.  Protective Order.  Social Media.
     Evidence, Authentication.



     Complaint for protection from abuse filed in the Lawrence
Division of the District Court Department on October 16, 2017.

     The case was heard by Mark A. Sullivan, J.


     Francis T. O'Brien, Jr., for the defendant.


     BLAKE, J.  The defendant, A.P.B., appeals from the issuance

and extension of a G. L. c. 258E harassment prevention order

(c. 258E order) in the District Court.  He claims that the

evidence was insufficient to support the issuance of the ex

parte order and the order after notice. We agree and vacate the order that entered at the hearing after notice.[1]

Background. The parties, who were students at the same college, had previously had a romantic relationship. By March, 2017, their on-again, off-again relationship had ended. At this time, the plaintiff, R.S.,[2] began receiving an increasing number of text messages and other messages through various social media websites. She asked A.P.B. to stop messaging her and eventually blocked his telephone number and "Twitter" social media account. A.P.B. then reached out to friends of R.S. Thereafter, R.S. received messages that she described as "linked to [A.P.B.'s] name" as well as messages from what she called "fake accounts" and some that were "sexually aggressive."[3] R.S. contacted a mutual friend of the parties and asked him to ask A.P.B. to "stop." R.S. continued to receive messages from more fake accounts, causing her to file a police report with the college police department.

---

[1] A.P.B. is not entitled to appellate review of the ex parte order. See V.M. v. R.B., 94 Mass. App. Ct. 522, 524-525 (2018); C.R.S. v. J.M.S., 92 Mass. App. Ct. 561, 564 (2017). The hearing after notice is the review provided by law for an ex parte order.

[2] R.S. did not file a brief or participate in this appeal.

[3] As discussed infra, the sexually aggressive messages were not from accounts with A.P.B.'s name or variations of his name.

Ex parte hearing. On October 16, 2017, R.S. applied for an abuse prevention order pursuant to G. L. c. 209A. In support of her request, R.S. filed an affidavit that recounted the parties' on and off relationship. In her affidavit, R.S. wrote that "[d]ue to [A.P.B.'s] persist[e]nce through his messages and graphic language, he has instilled fear in me." At the ex parte hearing, the judge asked R.S. a series of questions. He asked, "You were nervous about [the messages] but you weren't afraid at that point?" R.S. answered, "No." The judge then asked whether there had been "any problems with abuse or was [A.P.B.] being too physical with you or anything" during the relationship. She again answered, "No." The judge then asked, "[A]re you feeling like he is harassing you or do you feel like he is abusing you?" and before R.S. responded, the judge stated, "This needs to be a harassment order. This is not a -- abuse is defined as harming, threatening to harm you physically or placing you in fear of imminent harm. That's not what you're telling me. But you are telling me that you're afraid of him because he is harassing you with the volume of contact and the content of those contacts." R.S. replied, "Yes, the content." The judge did not issue a domestic abuse prevention order pursuant to G. L. c. 209A. Instead he issued a harassment c. 258E order.[4]

---

[4] In this case, there was no error in the conversion of the type of order requested from c. 209A to c. 258E. At all times

Hearing after notice. On October 24, 2017, a different judge held an evidentiary hearing on R.S.'s request for an extension of the c. 258E order. A.P.B. appeared with counsel. R.S. appeared pro se and testified in narrative form, answering questions interposed by the judge. A detective lieutenant from the college police department was also present. R.S. recounted much of what was set forth in her affidavit concerning her receipt of social media and text messages. After blocking A.P.B. from her accounts on these sites in the spring of 2017, she continued to receive messages, as did some of her friends.[5]

R.S. testified that she thereafter received messages on her "Snapchat" account[6] with three variations of A.P.B.'s name:

---

A.P.B. had notice that the order was issued as a harassment prevention order, there was no objection to the conversion, and A.P.B. suffered no prejudice from the conversion. See Frizado v. Frizado, 420 Mass. 592, 596-598 (1995) (basic due process considerations apply in context of these proceedings).

[5] Examples of these messages include, "Can you tell [R.S.] that I'm looking for her?" and, "Tell her I think of her every day I wake up. She won't regret it if she texts me, and I won't take no for an answer. I mean that in a great way." A friend of R.S. responded to A.P.B., "[W]hat do you want from her?" He replied, "To be friends and say sorry. Tell her I ain't giving up. What do I have [to do] for [R.S.] to talk to me?" At the ex parte hearing R.S. described receiving a picture that included A.P.B.'s "stomach and also lower, one of them was, but not -- [p]ictures of his penis." R.S. did not recount this testimony at the hearing after notice and did not provide the judge with copies of the messages she received that she apparently had with her at the ex parte hearing.

"[A.P.B.] 123," "[A.P.B.] 96," and "[A.P.B.] 82."[7]  None of these messages were abusive, malicious, or intimidating.  At the end of the summer of 2017, she received a Snapchat message from someone whom she believed was A.P.B.'s eleven year old brother.  There was no evidence of the content of this message.  A.P.B. also messaged another friend of R.S. claiming he found something that belonged to R.S.  R.S. asked the friend to tell A.P.B. to leave R.S. alone.

Upon her return to school in the fall of 2017, R.S. described receiving "a[d]ds" on her Snapchat account from people she did not know.  Most of the names[8] included the number 59, a number that had no significance to her.  R.S. replied to one of these messages, asked if they were coming from A.P.B., and asked for the messages to stop.  The response was "just send me some nudes . . . send me pics."  When R.S. asked who the messages were from, the sender responded, "the guy who wants to fuck you senseless."  She asked if it was A.P.B.  After some additional messaging the sender said, "[A.P.B.] gave me your Snap, though. I'm trying to fuck."  R.S. asked to be left alone and the

---

[6] "Snapchat is a social media website on which a member may share information with a network of 'friends.'"  F.K. v. S.C., 481 Mass. 325, 327 (2019).

[7] R.S. did not describe the content of these messages.

[8] The names were "Mike Williams," "Tyler Bennett 59," "Cam Carter 59," "Bar Stool Smokes 59," and "Nudes for Money 59."

response was, "You sure you're good?  You don't want to have any fun?  Yes or no, final answer."

Thereafter R.S. received a Snapchat "add" from "Matty P 559" with a message that read, "heard [R.S.] send[s] nudes for money."  It continued, "what are you doing?  A couple of nudes each, no ones [sic] got to know. . . .  If you don't answer, I'm going to send you nudes."  She then received a picture of a leg.

Before she contacted the college police, R.S. reached out to a mutual friend asking for help in stopping the messaging.  R.S. testified that the friend said, "It's been, like, two years.  [A.P.B.] admitted to doing it a few times, but he claims he hasn't done it in a while . . . ."  "It" was never defined.

The detective lieutenant testified that the college police were investigating the case and that "anybody, basically, can create a user name.  They just create a new email address and they get this user name . . . ."  She acknowledged that it was very difficult to actually track who sends these types of messages.[9]

---

[9] There were messages that A.P.B. acknowledged he sent.  He reached out to the R.S. on the anniversary of his half-sister's death and on R.S.'s birthday.  He contacted a mutual friend after he found some of R.S.'s personal property and wanted to return it to her.  None of these acts constitutes harassment as defined by G. L. c. 258E, § 1.  A.P.B. testified that after he was asked not to contact R.S., he did not contact her again.

At the conclusion of the hearing, A.P.B. argued, as he does here, that there was insufficient evidence of three acts of harassment and no evidence of "cruelty, hostility, or revenge that would allow the court to extend the order."  The judge extended the order for one year.

Standard of review.  We review a c. 258E order to determine whether a fact finder could conclude "by a preponderance of the evidence, together with all permissible inferences, that the defendant had committed [three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse or damage to property" (quotation and citation omitted).  Gassman v. Reason, 90 Mass. App. Ct. 1, 7 (2016).  "[T]here are two layers of intent required to prove civil harassment under c. 258E:  the acts of harassment must be wilful and '[m]alicious,' the latter defined as 'characterized by cruelty, hostility or revenge,' and they must be committed with 'the intent to cause fear, intimidation, abuse or damage to property.'"  O'Brien v. Borowski, 461 Mass. 415, 420 (2012), quoting G. L. c. 258E, § 1.

Discussion.  1.  Messages from A.P.B.  The plaintiff must demonstrate, by a preponderance of the evidence, that the defendant committed three or more acts of harassment within the meaning of G. L. c. 258E, § 1.  See Van Liew v. Stansfield, 474

Mass. 31, 36-37 (2016). R.S. testified that she received three messages that included A.P.B.'s name, all of which related to the status of their relationship. A.P.B. was persistent in trying to contact R.S., but none of those messages established harassment. Moreover, there was no evidence that the messages were sent by A.P.B. willfully or maliciously "each with the intent to cause fear, intimidation, abuse, or damage to property" (quotation omitted), Seney v. Morhy, 467 Mass. 58, 63 (2014), and which did in fact cause R.S. fear, intimidation, abuse, or damage to property. It is understandable that R.S. may have felt aggravated or annoyed by these messages. She testified that she was not in fear, however, and the evidence was insufficient to find that these messages constituted acts of harassment.

2. Messages from fake accounts. R.S. also received messages from accounts that she called fake accounts, but which she believes were sent by A.P.B. Many of these messages included the number "59." There was no evidence about the significance of this number, and none of the addresses bearing A.P.B.'s name included this number.[10] In addition, these fake accounts did not include A.P.B.'s name or any variation thereof. While circumstantial proof may be sufficient to prove that

---

[10] The messages from A.P.B. included the numbers "123," "96," and "82." See infra at    .

someone sent harassing messages, here, the messages with the "adds" are completely different in form and substance from the messages sent by A.P.B.[11]  Indeed, the detective lieutenant testified that "anybody, basically, can create a user name," acknowledging that it was very difficult to actually track who sent these types of messages.  When asked, R.S. confirmed that she was "speculating" that A.P.B. sent these messages.

In many ways, these fake account messages are akin to an anonymous letter.  Indeed, where a witness has received a letter and cannot identify the writer's handwriting or signature, evidence that the writer identified himself as a particular individual is not sufficient to authenticate the letter as being from the defendant.  Commonwealth v. Purdy, 459 Mass. 442, 449 (2011).  Moreover, although "e-mails and other forms of electronic communication present their own opportunities for false claims of authorship, the basic principles of authentication are the same."  Id. at 450.  To determine whether there was sufficient evidence that these fake accounts were created by A.P.B., we look at the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics" of the messages (citation omitted).  Id. at

---

[11] Although one message from A.P.B. may have included an inquiry whether R.S. wanted a photograph of A.P.B.'s genitalia, which he did not send, the messages otherwise are completely different in form and substance.

448. "Evidence that the defendant's name is written as the author of an e-mail or that the electronic communication originates from an e-mail or a social networking Web site . . . that bears the defendant's name is not sufficient alone to authenticate the electronic communication as having been authored or sent by the defendant" (citation omitted). Commonwealth v. Gilman, 89 Mass. App. Ct. 752, 758-759 (2016). See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 314 (2019).

Here, the names on the fake accounts bear no resemblance to those accounts that A.P.B. acknowledged were his. They do not contain his name or any variation of his name. Also, the tone, tenor, and content of the messages from A.P.B. are in stark contrast to the fake account messages at issue here. A.P.B.'s messages are reflective of an effort to revive a relationship that R.S. admits was on again, off again. By contrast, the fake account messages contain sexual innuendo and vulgarity, something noticeably absent from A.P.B.'s messages. Here, R.S. was unable to bridge the evidentiary gap concerning these messages.

Because we determine that the evidence of who sent the fake account messages was insufficient to conclude it was the defendant, and the messages admittedly sent by A.P.B. were not harassing, we need not reach the other claims raised by A.P.B.

11

Conclusion.  The c. 258E harassment prevention order entered on October 24, 2017, is vacated.  The appeal from the ex parte c. 258E order entered on October 16, 2017, is dismissed as moot.  See V.M. v. R.B., 94 Mass. App. Ct. 522, 527 (2018).

So ordered.