YASMIN Y. vs. QUESHON Q., 101 Mass. App. Ct. 252

 
 YASMIN Y. vs. QUESHON Q. [Note 1]

101 Mass. App. Ct. 252
 February 9, 2022 - June 16, 2022

Court Below: District Court, Worcester Division
Present: Rubin, Kinder, & Ditkoff, JJ.

 

No. 21-P-543.

Civil Harassment. Harassment Prevention. Protective Order. Indecent Assault and Battery.

Discussion of the standard of review applicable when a plaintiff who has received a harassment prevention order based on a prior sex offense at a hearing after notice seeks an extension of that order. [256-258]

At a hearing on a request to further extend a harassment prevention order issued pursuant to G. L. c. 258E, a District Court judge erred in terminating the existing order sua sponte, where the plaintiff was not required to re-prove the acts of indecent assault and battery that already had been established at the first hearing after notice as the basis for the initial harassment prevention order, but was only required to show that an order was necessary to protect her from the impact of that prior sex offense. [258-259] 

Complaint for protection from harassment filed in the Worcester Division of the District Court Department on October 4, 2019. 

 A hearing to extend the harassment prevention order was had before Jennifer L. Ginsburg, J. 

Natalie F. Panariello for the plaintiff.

Darren T. Griffis for the defendant.

 DITKOFF, J. The plaintiff appeals from an order of a District Court judge denying her request for an extension of a harassment prevention order pursuant to G. L. c. 258E, § 3. A harassment prevention order was extended at a hearing after notice on the basis that the defendant committed two acts of indecent assault and battery against the plaintiff. [Note 2] The case is before us on review of the denial of the plaintiff's request to extend the order for another nine months. We conclude that, where a harassment prevention order is based on the commission of a delineated sex offense, to obtain an extension the plaintiff must prove that an 

 Page 253 

order is necessary to protect her from the impact of that prior sex offense. Further concluding that the judge improperly required the plaintiff to re-prove the acts of indecent assault and battery already established at the first hearing after notice, we vacate the order denying the extension and remand the matter for further proceedings.

 1. Background. a. Hearing after notice. An ex parte order issued on October 4, 2019. At the hearing after notice on October 25, 2019, the plaintiff testified to the following facts. [Note 3] The plaintiff and the defendant lived in the same apartment complex. The plaintiff was a medical student, and the defendant was a radiology resident at the affiliated teaching hospital. The plaintiff and the defendant were friendly with each other. During April through July 2019, the plaintiff arranged for the defendant to take over her apartment lease.

 On April 23, 2019, the plaintiff went to the defendant's apartment to watch the fantasy television show Game of Thrones. The plaintiff sat on the far right end of the couch, and the defendant sat a mere five or six inches to her left. At some point, the defendant put his arm over the plaintiff's shoulder. The plaintiff objected, saying, "[W]hat are you doing, you can't do that." The defendant replied, "[N]o, no, it's nothing, I'm not doing anything," and withdrew his arm. A short time later, the defendant placed his hand on the plaintiff's inner thigh, and she protested again. The defendant said, "[N]o, it's nothing, I'm not doing anything," and eventually, he took his hand off her thigh.

 After the episode of Game of Thrones ended, the defendant suggested that they practice physical exams. He started lifting the plaintiff's shirt, and she redirected him towards checking a pulse in her foot.

 The defendant told the plaintiff that he "needed to check for aortic coarctation." [Note 4] The defendant laid the plaintiff down on the couch and put his hand over her jeans, supposedly to feel the femoral pulse in her groin. The plaintiff protested, but the defendant moved his hand underneath her jeans, over her underwear. The plaintiff protested again, but the defendant was laughing 

 Page 254 

and saying, "[O]h, no, it's nothing, I'm checking for aortic coarctation." The defendant moved his hand underneath the plaintiff's underwear, not near where her pulse would be, but towards the midline of her groin. The plaintiff told the defendant, "[W]hat are you doing, you can't do that." The plaintiff jumped up and left.

 On May 3, 2019, the defendant invited the plaintiff to his apartment for ice cream. During their conversation, the defendant told the plaintiff to close her eyes, and then he kissed her. The plaintiff told the defendant, "[Y]ou can't do that." The defendant replied, "[N]o, no, it's nothing, I'm not doing anything, what, it's nothing."

 The plaintiff explained that she did not want a physical relationship with the defendant. The plaintiff and defendant agreed that they would not have any more contact, and then she left. The plaintiff and defendant continued contact to facilitate his taking over her lease. Additionally, on May 11, 2019, at 11 p.m., the defendant sent a text message to the plaintiff that asked, "[A]wake?" 

 In early July, the plaintiff left the area, and the defendant took over her lease. [Note 5] In July 2019, the plaintiff reported her interactions with the defendant to a professor at her school. In August 2019, the plaintiff reported the incidents to the local police. In October 2019, the plaintiff learned that she might qualify for a harassment prevention order, and she applied. [Note 6] Based on evidence that the defendant had committed sex offenses against the plaintiff, the judge extended the order. The defendant did not appeal.

 b. Extension hearing. Between the hearing after notice and the extension hearing, the plaintiff saw the defendant twice. [Note 7] In November 2019, the plaintiff saw the defendant at a fast food restaurant. The plaintiff was scared and left immediately. In February 2020, while standing in a cafeteria line, the plaintiff looked up and saw the defendant. The plaintiff "was so scared that [she] was trying not to cry." The defendant glared at her and walked away.

 Page 255 

 During the fall of 2019, the plaintiff was afraid to go to school in person, so the school accommodated her and let her attend some classes remotely. The plaintiff avoided radiology rounds and radiology procedures and did not intend to do a radiology rotation in her fourth year of school because she did not want to see the defendant. The plaintiff worried about seeing the defendant at the hospital.

 Over the plaintiff's objection, the judge (a different judge than the judge who held the hearing after notice) allowed the defendant to testify regarding the underlying incidents. The defendant testified to the following facts. On April 23, 2019, the plaintiff mentioned that she did not have a pulse in her lower extremity. From her semi-seated position on the couch, the plaintiff put her leg between the defendant's legs and suggested that he try to find her pulse. He checked for a pulse in the front of her foot and then in the back of her ankle, but he did not find a pulse.

 Meanwhile, according to the defendant, the plaintiff giggled and smiled, and kept touching the defendant's arm and chest. The defendant moved to check the pulse behind the plaintiff's knee. The defendant could not find a pulse, and the plaintiff mentioned that the next step was to check the femoral pulse. The defendant moved a little bit so that the plaintiff could lie down on the couch.

 The defendant tried to feel the plaintiff's femoral pulse over her clothes, and she laughed and said, "[E]verybody knows it's impossible to feel a pulse over clothes." The plaintiff, laughing and smiling, unbuttoned and unzipped her pants. The defendant put his hand on the plaintiff's groin, on top of her underwear. The plaintiff continued to giggle, and the defendant touched her skin. The defendant could not feel the plaintiff's pulse, so he moved his hand laterally towards the midline of her groin. The plaintiff laughed and moved a little, so the defendant could not feel her pulse.

 The defendant moved his hand away, and the plaintiff buttoned and zipped up her pants. The plaintiff stayed for about one and one-half hours while they finished watching Game of Thrones and kept talking.

 On May 3, 2019, according to the defendant, the plaintiff made a comment to the defendant that he should break up with his girlfriend. The defendant told the plaintiff that he would not break up with his girlfriend, and that he was not interested in a romantic relationship with her. The plaintiff stopped laughing and moved her hand away from his. After an uncomfortable ten to fifteen 

 Page 256 

minutes of conversation, the defendant suggested that they should not see each other anymore.

 In closing, defense counsel argued that "the evidence is clear . . . that there was nothing nonconsensual that occurred in April of 2019." The judge ruled that, "based on my determination of all of the events back in 2019 and after, I do not see a sufficient legal basis for this type of an order." She then terminated the existing order sua sponte at 10:35 a.m. [Note 8] This appeal followed.

 2. Standard of review. "We review 'for an abuse of discretion or other error of law.'" Vera V. v. Seymour S., 98 Mass. App. Ct. 315, 318 (2020), quoting G.B. v. C.A., 94 Mass. App. Ct. 389, 393 (2018). "[W]here we are able to discern a reasonable basis for the order in the judge's rulings and order, no specific findings are required." Vera V., supra, quoting G.B., supra at 396. "Where, however, the record reflects that the judge based [her] decision on an improper standard, we will not hesitate to remand for further findings." Vera V., supra.

 3. Standard for extending a harassment prevention order based on a prior sex offense. Most harassment prevention orders are granted based on "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." Orla O. v. Patience P., 100 Mass. App. Ct. 126, 127 (2021), quoting G. L. c. 258E, § 1. There is, however, another basis for a harassment prevention order: proof that the defendant "'by force, threat or duress cause[d the plaintiff] to involuntarily engage in sexual relations' [or proof that the] defendant committed any of twelve specifically enumerated sex crimes." F.A.P. v. J.E.S., 87 Mass. App. Ct. 595, 599 (2015), quoting G. L. c. 258E, § 1. [Note 9] One of those delineated crimes -- relevant here -- is indecent assault and battery. See G. L. c. 258E, § 1; A.R. v. L.C., 93 Mass. App. Ct. 758, 759 (2018). Where a harassment prevention order is based on this showing, "[p]roof that the defendant intended to instill fear, and in fact did so, would be wholly unnecessary." F.A.P., supra. In the instant case, it is evident that the "harassment" 

 Page 257 

found by a preponderance of the evidence by the judge who initially extended the order at the hearing after notice was the commission of the crime of indecent assault and battery. [Note 10]

 We have not yet had occasion to determine what standard applies when a plaintiff who has received a harassment prevention order based on a prior sex offense at a hearing after notice seeks a further extension of the order. Cognizant that "both this court and the Supreme Judicial Court have applied essentially the same analysis for abuse prevention orders issued pursuant to c. 209A and harassment prevention orders issued pursuant to c. 258E," Tom T. v. Lewis L., 97 Mass. App. Ct. 698, 700 (2020), we are guided by the case law involving abuse prevention orders based on prior sexual or physical abuse (rather than fear of imminent harm). In that circumstance, a judge extends an abuse prevention order where "the plaintiff has 'suffered physical abuse' or 'past sexual abuse' and 'an order [i]s necessary to protect her from the impact of that abuse.'" Vera V., 98 Mass. App. Ct. at 319, quoting Yahna Y. v. Sylvester S., 97 Mass. App. Ct. 184, 186-187 (2020). Similarly, the judge should extend a harassment prevention order where the plaintiff has suffered from a past sex offense delineated in G. L. c. 258E, § 1, and the order is necessary to protect her from the impact of that past sex offense.

 The impact of the past sex offense need not be based on a threat of future harm. See Yahna Y., 97 Mass. App. Ct. at 187 ("The judge could reasonably conclude that the damage from the defendant's past sexual abuse still affected the plaintiff and that an order was necessary to protect her from the impact of that abuse, even if the evidence did not show that another sexual assault or other physical harm was imminent"). Rather, "an extension is warranted if 'there is a continued need for the order because the damage resulting from that physical harm [or sexual assault] affects the victim even when further physical attack [or sexual assault] is not reasonably imminent.'" Vera V., 98 Mass. App. Ct. at 317, quoting Callahan v. Callahan, 85 Mass. App. Ct. 369, 374 (2014). "[T]he judge must make a discerning appraisal of the continued need for [a harassment] prevention order to protect the plaintiff from the impact of the violence already inflicted." Callahan, supra.

 Page 258 

 The judge may consider such factors as "the defendant's violations of protective orders, ongoing child custody or other litigation that engenders or is likely to engender hostility, the parties' demeanor in court, the likelihood that the parties will encounter one another in the course of their usual activities (e.g., residential or workplace proximity, attendance at the same place of worship), and significant changes in the circumstances of the parties." Iamele v. Asselin, 444 Mass. 734, 740 (2005). Accord Callahan, 85 Mass. App. Ct. at 374. For example, an order may remain necessary where the plaintiff's "fear of [the defendant] was clear and palpable and . . . her sense of security would be substantially diminished were the order to expire." Id. at 375. Similarly, where the plaintiff "felt uncomfortable being in the court room with the defendant" and "the assault 'was a very serious incident . . . so profound that [the plaintiff needed] to have [the order made] permanent,'" an extension was warranted. McIsaac v. Porter, 90 Mass. App. Ct. 730, 734-735 (2016). By contrast, evidence that "the parties had been together 'virtually every day' for over one year to facilitate shared parenting time" without incident, when combined with the judge's credibility findings and observation of the plaintiff's demeanor, supported not extending an order. S.V. v. R.V., 94 Mass. App. Ct. 811, 813-814 (2019).

 4. Relitigating the basis for the first order after a two-party hearing. The defendant argues that, at the extension hearing following the hearing after notice, the plaintiff had the burden of re-proving that the defendant committed the 2019 acts of indecent assault and battery. Where an order was based on a reasonable fear of imminent serious physical harm (in an abuse prevention order context), the plaintiff must prove reasonable fear anew at each extension hearing. See Iamele, 444 Mass. at 740-741. "This does not mean that the restrained party may challenge the evidence underlying the initial order." Id. at 740. Accord McIsaac, 90 Mass. App. Ct. at 735. Rather, "the plaintiff is not required to re-establish facts sufficient to support that initial grant of an . . . order." Vittone v. Clairmont, 64 Mass. App. Ct. 479, 485 (2005), quoting Rauseo v. Rauseo, 50 Mass. App. Ct. 911, 913 (2001). [Note 11]

 Here, the record suggests that the extension judge considered anew whether the 2019 acts of indecent assault and battery 

 Page 259 

occurred, rather than simply determining whether there was a continued need for the order. The judge twice referred to the underlying incidents as "alleged" incidents. The judge stated that her denial was "based on my determination of all of the events back in 2019 and after." The judge, however, should not have determined whether the 2019 acts of indecent assault and battery occurred, as the plaintiff was "not required to re-establish facts sufficient to support that initial grant of a[ restraining] order." Rauseo, 50 Mass. App. Ct. at 913. Rather than reconsider whether the underlying acts of indecent assault and battery occurred, a judge should simply determine whether the plaintiff has shown that "an order [i]s necessary to protect her from the impact of that" prior sex crime. Yahna Y., 97 Mass. App. Ct. at 187.

 5. Conclusion. The order denying the extension of the harassment prevention order is vacated, and the matter is remanded for further proceedings.

 So ordered. 

FOOTNOTES

[Note 1] The parties' names are pseudonyms. 

[Note 2] The order was initially set to expire on March 20, 2020, but the order was subsequently extended several times because of the COVID-19 pandemic. 

[Note 3] The defendant declined to testify in light of an ongoing criminal investigation. The judge decided not to draw an adverse inference against the defendant. See M.G. v. G.A., 94 Mass. App. Ct. 139, 143 (2018). 

[Note 4] According to the plaintiff, aortic coarctation causes different pulses in the upper and lower extremities, and, if the plaintiff had it, she would be "dead or halfway dead." 

[Note 5] The defendant paid the plaintiff $300 less than what she said he owed her. By e-mail, the defendant said that the plaintiff left the apartment in poor condition. The defendant also paid the plaintiff $360 that she had overpaid in rent. The defendant argued in closing that the plaintiff misrepresented the incidents because she was upset about the money dispute. 

[Note 6] The plaintiff moved back to the area sometime in the fall of 2019. 

[Note 7] The plaintiff does not allege that the defendant violated the harassment prevention order. 

[Note 8] The order was set to expire at 4 p.m. "The judge's sua sponte vacation of the original order was error. The only issue before the judge was whether the order should be extended." Iamele v. Asselin, 444 Mass. 734, 741-742 (2005). 

[Note 9] Another basis for a harassment prevention order is proof that a defendant committed the crimes of stalking or criminal harassment. See A.S.R. v. A.K.A., 92 Mass. App. Ct. 270, 275 (2017). 

[Note 10] That judge, however, stressed that "the burden of proof here is substantially different from the burden of proof in a criminal trial. It's by a preponderance of the evidence." 

[Note 11] This principle applies only where there has been a hearing after notice. An ex parte order is entitled to no weight and the issues must be relitigated anew at the hearing after notice if the defendant appears. See Smith v. Jones, 67 Mass. App. Ct. 129, 133-134 (2006). Accord R.S. v. A.P.B., 95 Mass. App. Ct. 372, 372 n.1 (2019); C.R.S. v. J.M.S., 92 Mass. App. Ct. 561, 565 (2017). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.