NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-906

M.B.

vs.

T.E.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, T.E., appeals from an order of the District Court dated July 18, 2022, extending a harassment prevention order issued pursuant to G. L. c. 258E (c. 258E).  Because we cannot identify three acts of harassment on this record, we vacate the order.[1]

In apparent retaliation for T.E.'s cooperation with a Federal drug prosecution, a third party, S.B., established "whosarat.com," a website dedicated to identifying and posting personal information about government informants.  This situation and harassment by S.B.[2] has, quite understandably,

---

[1] M.B. did not file a brief in this appeal.
[2] Details regarding S.B.'s harassment of T.E. may be found in an unpublished memorandum and order issued by a different panel of this court pursuant to our Rule 23, T.E. v. S.B., 100 Mass. App. Ct. 1132 (2022).

caused T.E. considerable distress.[3]  T.E. believes that because certain details known only to the police appeared on the website, a particular police department must be providing his information to the website.

M.B. is a police officer of that department, shares the same last name as S.B., and is his distant relative.  T.E. theorized that M.B. and the police department are part of a conspiracy to harass him.  He sent a series of emails to the department's Chief about the situation, some of which were intemperate and counterproductive, and some of which M.B. perceived as a threat.

On July 7, 2022, M.B. applied for the c. 258E harassment prevention order.  After an ex parte hearing, a judge issued the c. 258E harassment prevention order and set a hearing date for July 18, 2022.  On July 18, 2022, a different judge held an evidentiary hearing where M.B. and T.E. were present.

The judge heard testimony from M.B. and T.E., including that T.E. tried to stare down M.B. in court before the hearing, reviewed documents and video offered by T.E., and heard that T.E. filed a small claims lawsuit against M.B. for "legal fees" so he could obtain discovery.[4]  The judge credited M.B.'s

---

[3] Any stress that T.E. has experienced, of course, would not justify his harassing someone else.

[4] At the beginning of the extension hearing the judge indicated that she was reviewing, "the paperwork," a term that was not

2

testimony that he did not know S.B. was his cousin until he asked a great aunt and that M.B. did not know S.B. The judge extended the order for one year. T.E. timely appealed, arguing, among other things, that the order was "a violation of [his] First Amendment rights."[5]

"In reviewing a civil harassment order under G. L. c. 258E, we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant committed acts that constituted one of the enumerated forms of harassment." A.S.R. v. A.K.A., 92 Mass. App. Ct. 270, 274 (2017). "'Harassment' is defined in G. L. c. 258E, § 1, in several ways, and a plaintiff who proves any one of the various forms of harassment qualifies for an order prohibiting the harassment." Id. Here, the relevant definition of harassment is "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear,

---

defined. T.E. has provided us with M.B.'s affidavit in support of the application for an order pursuant to G. L. c. 258E and several emails. M.B. read some parts of some email into the record. The hearing transcript indicates that no exhibits were provided to the judge. The better practice would have been to either admit the email as exhibits and describe them or had the email read in full into the record, including sender and recipients.

[5] In the record, T.E. provided the ex parte order but not the one-year extension. As an exercise of our discretion, we obtained the extension order from the District Court. See Cavanaugh v. Cavanaugh, 490 Mass. 398, 404 (2022), citing Mass. R. A. P. 18 (a) (1) (D), as appearing in 481 Mass. 1637 (2019). The only difference between the two orders is the extended date.

3

intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property."  G. L. c. 258E, § 1 (i).

"[T]here are two layers of intent required to prove civil harassment under c. 258E:  the acts of harassment must be wilful and '[m]alicious,' the latter defined as 'characterized by cruelty, hostility or revenge,' and they must be committed with 'the intent to cause fear, intimidation, abuse or damage to property.'"  O'Brien v. Borowksi, 461 Mass. 415, 420 (2015), quoting G. L. c. 258E, § 1.  To prevent chilling a defendant's rights under the First Amendment, where, as here, some of the conduct involves speech, that speech must constitute "true threats" or "fighting words" to qualify as an act of harassment. Seney v. Morhy, 467 Mass. 58, 63 (2014).  See O'Brien, supra at 423-425.  True threats are statements that "cause the victim to fear [] harm now or in the future and evince intent on the part of the speaker or actor to cause such fear" (emphasis added). O'Brien, supra at 425.  See Counterman v. Colorado, 134 S. Ct. 2106, 2113 (2023) (requiring State to prove in true threat cases that defendant had some subjective "understanding of his statements' threatening character").  Chapter 258E, § 1 (i), which demands the "intent to cause fear, intimidation, abuse or damage to property," imposes this subjective intent requirement. Phrases "amenable to a reasonable, nonviolent interpretation" do

4

not suggest a clear intent to threaten.  Commonwealth v.
Walters, 472 Mass. 680, 695 (2015).  Ultimately, a judge cannot
characterize speech as an act of harassment unless the judge can
find that the speaker had the subjective intent to communicate
that statement as a threat.  See O'Brien, supra at 426.

Because the judge here did not articulate which of T.E.'s
actions constituted the three acts, our review is based on the
entirety of the record.  See Yasmin Y. v. Queshon Q., 101 Mass.
App. Ct. 252, 256 (2022).

In reviewing that record, we understand that the hearing
judge was able to observe the parties' court room demeanor,
particularly T.E.'s, which the transcript alone makes clear was
quite volatile.  The hearing judge was admirably patient with
T.E., listening to his concerns and summarizing them back to him
to ensure she understood him.  Nonetheless, we can count at most
two acts of potential harassment when the statute requires
three.

M.B. testified that he received an email from T.E. which
stated, "You're going to be world F-ing famous, my friend,"
which M.B. took as a threat.  We assume without deciding for
purposes of this appeal that the contents of this email
constituted an act of harassment.[6]

---

[6] The record is unclear whether a copy of the email was ever
given to the judge.  Nonetheless, because the email was read

5

In addition, at the extension hearing, M.B. testified that before court started, T.E. approached where M.B. was sitting and gave him "a stare-down in a very threatening way."[7]  T.E. admitted to the conduct, claiming he needed to get a good look at M.B. because T.E. had suffered a long pattern of harassment by third parties.  We assume without deciding for purposes of this appeal that the stare down also constituted a threat by T.E. towards M.B.

A review of the remaining documents, testimony, and video provides no additional conduct that could constitute harassment consistent with the First Amendment.  We turn first to a June 17, 2022, email from T.E. to the Chief, M.B., and T.E.'s lawyer.  For context, T.E. had previously emailed the Chief that there

> "seems to be quite of intercorrelation  between [S.B.] and your officer [M.B.].  I guess they have a web site that targets police and rats as you call them.  [Link to website].
>
> "Not sure either but this is going come out now.
>
> "This last filing and court appearance around this issue have been the tip over for me.
>
> "We will be filing a bill of particulars regarding [M.B.].

_____

into the record and because we treat the email as one act of harassment for purposes of deciding this appeal, the record is adequate for us to review T.E.'s appeal.

[7] M.B. further testified that he knew that T.E. had "some assaults, actually one assault and battery on a -- a police officer as well."

"Thank you for responding I only ask that you investigate this. I have an attorney on file you can contact him if needed"[8]

After further back and forth, on July 5, 2022, the Chief acknowledged that M.B. "is a distant relative with no known affiliation" to S.B. T.E. responded,

"OK

"That seems to match up with the statement ' I come from a big Irish/Italian family I take care of my own problems ! '

"[YouTube link]

"I don't have specific allegation yet , but for my own sanity I would like to have conversation with Officer [M.B.] . Shouldn't be that big of a deal , he's a distant relative no known affiliation

"What time this week is good for you guys ?"

The YouTube link led to a video interview by a media personality with S.B., who made the preceding statement. In other words, T.E. was quoting S.B.'s statement that could be perceived as a threat by S.B. directed at T.E. The point of the email was to seek help from the police, albeit in a ham-fisted way, to determine whether M.B. is part of S.B.'s family that might take care of its own. This "reasonable, nonviolent interpretation" does not suggest T.E. intended to threaten M.B. when he sent the email. Walters, supra at 695. While it is understandable that a busy reader might think T.E. was making the statement to M.B.,

---

[8] The punctuation and capitalization in the quoted segments are as they appear in the original emails.

7

read in context, the email did not amount to a true threat or fighting words by T.E. directed at M.B.[9]

While T.E. repeatedly contacted M.B.'s chief and used crude language, the other communications did not as a matter of law constitute harassment. See A.R. v. L.C., 93 Mass. App. Ct. 758, 761 (2018) (conduct considered harassing in colloquial sense might "not [be] adequate to meet the standard" set forth in O'Brien). In one email the Chief told T.E. he would be out of the office for knee surgery and referred him to a Captain. T.E.'s response, "Are you f'ing kidding me?" was not a true threat. While the email could be "characterized by . . . hostility," O'Brien, supra at 420, there is no indication that T.E. intended to cause M.B. fear, intimidation, or abuse when T.E. sent it.[10] See Van Liew v. Stansfield, 474 Mass. 31, 39 (2016) (telling planning board member "very loudly" that she was "wrong, uneducated, or stupid" did not constitute "fighting words" or "true threats" to support issuance of civil harassment

---

[9] To the extent T.E. argues that M.B. or his colleague, Joseph Book (a pseudonym), perjured themselves by indicating they understood this email to be a statement by T.E. rather than a quote of a statement by S.B., that is not perjury. It is a misunderstanding of an email that could have much more clearly stated that T.E. was concerned by a statement S.B. made that T.E. perceived as a threat.

[10] Again, the record does not indicate that M.B. provided a physical copy of the email to the judge and T.E. does not include the email in the record, but the portion of the email that M.B. perceived was a threat was read into the record.

8

order).  In fact, all other email communications from T.E.,
though sometimes profane, fail to evince that he subjectively
intended to cause M.B. fear or harm.  While civility is
encouraged, and may well have achieved a better and faster
result for T.E., such civility cannot be required.  See Barron
v. Kolenda, 491 Mass. 408, 418 & 422 (2023) (holding board of
selectman policy requiring remarks at public meeting to "be
respectful and courteous, [and] free of rude, personal, or
slanderous remarks" unconstitutional).

In another email, T.E. stated in all capital letters that
the Chief had "consistently vacuumed up any of the fucking
evidence this has been gone on non-stop for me for a couple of
years."  M.B. described other emails as follows:  "Some [email]
were about a motor vehicle accident" about which M.B. had no
knowledge, one email was in bold, and T.E. also sent M.B. a
Facebook friend request.  While annoying, these were not true
threats.  Nothing else about the messages, or their context,
evinced that T.E. intended to cause M.B. fear or harm.  See R.S.
v. A.P.B., 95 Mass. App. Ct. 372, 376 (2019) (persistence alone
is insufficient to establish harassment).

The lawsuit that T.E. filed against M.B. also is
insufficient to qualify as the third separate act.  While the
small claims lawsuit may not have been the correct procedure for
T.E. to obtain help addressing his concern that the B. family

9

might harass or harm him, there is no evidence that T.E. willfully or maliciously filed it with the intent to cause "fear, intimidation, abuse or damage to property." O'Brien, 461 Mass. at 426 n.8. Moreover, while the small claims lawsuit may have been an annoyance, there is no evidence that the lawsuit did in fact cause M.B. "intimidation, abuse, or damage to property." G. L. c. 258E, § 1.

Finally, the judge reviewed a video of two officers serving T.E. with the ex parte order on July 12, 2022. T.E. believes the video proves that the police are conspiring against him. Instead, the transcript of the video indicates that T.E. is agitated and that the officer patiently explained the order. Nonetheless, T.E. does not make any threats toward M.B.

Accordingly, the extension order dated July 18, 2022, must be vacated.[11] We therefore remand the case to the District Court for entry of an order vacating and setting aside the harassment

---

[11] While we vacate the order, we caution that nothing herein should condone T.E.'s profanity or other aggressive behavior towards the Chief or M.B. Should T.E. commit three acts of harassment, either could avail himself of the protections of c. 258E.

prevention order, and for further actions required by G. L. c. 258E, § 9.  See F.K. v. S.C., 481 Mass 325, 335 (2019).[12]

                              So ordered.

                              By the Court (Henry,
                                Desmond & Englander, JJ.[13]),

                              *Joseph F. Stanton*

                              Clerk


Entered:  August 11, 2023.

---

[12] To the extent T.E. seeks to review rulings in other matters, which he identifies by docket number, his remedy was to file a timely notice of appeal in each of those matters.
[13] The panelists are listed in order of seniority.