NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-596

A.C.

vs.

W.J.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, W.J., appeals from a harassment prevention order issued against her pursuant to G. L. c. 258E.[1]  She contends that a Boston Municipal Court judge erred in issuing the order because the plaintiff, A.C., did not present sufficient evidence of three acts of "harassment," as required under the statute.  Specifically, she contends that (1) her online TikTok posts were protected speech, and (2) that she cannot be held responsible for the harassing conduct of third parties in these circumstances.  We agree and vacate the order.

---

[1] The order entered after a hearing on May 2, 2022, and was set to expire on May 2, 2023.  We were informed at oral argument that the order had expired by its terms and was not extended. The matter remains properly before us.  See Seney v. Morhy, 467 Mass. 58, 62 (2014).

Discussion.  In reviewing a civil harassment order under G. L. c. 258E, we consider "whether a fact finder could conclude 'by a preponderance of the evidence, together with all permissible inferences, that the defendant had committed [three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse or damage to property" (citation omitted).[2]  R.S. v. A.P.B., 95 Mass. App. Ct. 372, 375 (2019).  See G. L. c. 258E, § 1.  Where, as here, the defendant's conduct involves speech, that speech must generally constitute "true threats" or "fighting words" to qualify as an act of civil harassment.[3]  See Van Liew v. Stansfield, 474 Mass. 31, 37 (2016); Seney v. Morhy, 467 Mass. 58, 63 (2014).  "True threats" include "'direct threats of imminent physical harm,' as well as 'words or actions that -- taking into account the context in which they arise -- cause the victim to fear such [imminent

---

[2] In determining whether the three acts "did 'in fact cause fear, intimidation, abuse or damage to property,'" it is "the entire course of harassment, rather than each individual act, that must cause fear or intimidation."  O'Brien v. Borowski, 461 Mass. 415, 426 n.8 (2012).

[3] "Fighting words" are not at issue in this appeal.  See Van Liew, 474 Mass. at 37 ("To qualify as 'fighting words' the words 'must be a direct personal insult addressed to a person, and they must be inherently likely to provoke violence'" [citation omitted]).

physical] harm now or in the future'" (citation omitted).  Van Liew, supra at 37.  Whether speech "constitutes . . . a true threat is a matter to be decided by the trier of fact" (citation omitted).  A.S.R. v. A.K.A., 92 Mass. App. Ct. 270, 278 (2017).  It is the plaintiff's burden to prove each of the three acts of harassment.  V.J. v. N.J., 91 Mass. App. Ct. 22, 25 (2017).  "We review the judge's factual findings for clear error."  Ilan I. v. Melody M., 96 Mass. App. Ct. 639, 645 n.9 (2019).

Here, the judge identified the first act of harassment as a December 8 phone call from W.J., where she said to A.C., "I'm going to light you up" after learning that her pottery pieces would not be delivered that evening.  Assuming that this statement constituted an act of harassment under c. 258E,[4] the only other instance of alleged direct conduct by W.J. that qualifies as harassment on this record is from a December 14 phone call, that A.C. testified she received from a caller who identified herself as W.J. and threatened to kill her.[5]  Such a

---

[4] The only one to give meaning to this ambiguous phrase was D.G., who testified that he took it to mean that W.J. would post a negative Google review.  However, "[a] true threat does not require 'an explicit statement of an intention to harm the victim as long as circumstances support the victim's fearful or apprehensive response'" (citation omitted).  A.T. v. C.R., 88 Mass. App. Ct. 532, 536 (2015).

[5] A.C. testified that the caller from an unknown number not only identified herself as W.J., but also sounded as if she was her.

3

threat, if credited,[6] is clearly an act of harassment.  This leaves us to consider the question at the heart of this appeal: whether acts of harassment directed at A.C. by third parties in these circumstances can be attributed to W.J. to establish a third qualifying act within the purview of c. 258E.  The answer is no.

It is undisputed that W.J.'s TikTok[7] posts, in and of themselves, are protected speech.  See Packingham v. North Carolina, 582 U.S. 98, 105 (2017) ("social media users employ these websites to engage in a wide array of protected First Amendment activity on topics 'as diverse as human thought'" [citation omitted]).  The judge below, however, did not base her ruling solely on the content of W.J.'s online posts.[8]  Rather, in attributing third-party conduct to W.J., she reasoned:

---

[6] While not explicitly referenced in her oral findings, the judge referenced the December 14 phone call during a colloquy with A.C. at the May 2 hearing, stating, "I see one incident [of harassment] being the one where you testified one phone call where she . . . said things like she was going to, you know, kill your family or things like that."

[7] "TikTok 'is a short-loop video sharing [application] presently used by over 100 million Americans" (citation omitted).  Commonwealth v. Qasim Q., 491 Mass. 650, 651 n.2 (2023).

[8] In explaining the basis for her ruling to defense counsel, the judge stated that she drew a "reasonable inference" that "there was this targeted effort for these people to cause [A.C.] [fear], through [W.J.] . . . through the timing of all this."  When asked if W.J.'s TikTok posts constituted the predicate acts of harassment, the judge replied:

"that the volume and the timing of it creates more than a reasonable inference that this was a targeted attack on the plaintiff that was willful and malicious, and done with the intent to cause fear and intimidation and did in fact cause fear and intimidation."

Put another way, the judge appears to have inferred that W.J., acting in concert with third parties, orchestrated the relentless campaign of threats and harassment by others directed at A.C. This is too great an inferential leap on this record. See Reading Co-Op. Bank v. Suffolk Constr. Co., 464 Mass. 543, 556 (2013) (a reasonable inference "must be based on probabilities rather than possibilities and cannot be the result of mere speculation and conjecture" [citation omitted]). W.J.'s posts did not contain any threats toward A.C. Nor did they contain speech explicitly, or implicitly, that could be understood to urge viewers to threaten her.[9]

---

"No, I am not -- I am not saying that the TikToks did it. I am saying that when you look at all of the circumstances and the reasonable inferences, -- I'm not saying that the people just -- the people didn't just come out of the blue and come in such huge anger and volume because of [W.J.'s negative Google review], it is way more than that. It's over the top what has actually happened on all of that, and because of that, I find there's a reasonable inference, and that's it."

[9] In the criminal context, we have said "that a threat may be communicated to an intended target by way of a third-party intermediary, but only where it is shown that the defendant intended the threat to reach the target." See Commonwealth v. Hamilton, 459 Mass. 422, 427 (2011), and cases cited.

5

The only instructions W.J. issued -- aside from a subtle recommendation for users to review preexisting negative online reviews of A.C.'s studio for some "light reading" -- was in W.J.'s third TikTok post, where she asked viewers to not post false online reviews of A.C.'s pottery studio.  W.J. first made this request in a pinned[10] comment to one of her videos.  Thereafter, she stated multiple times in her posts that she did not believe A.C., or members of her studio, deserved to be harassed.  More to the point, there is no indication that W.J. directed third parties behind closed doors to threaten and harass A.C.  See F.K. v. S.C., 481 Mass. 325, 334 (2019) (no indication that defendant directed third parties to notify plaintiff of threatening song lyrics; rather, the plaintiff was notified by third parties "acting of their own volition").

Finally, we address whether a fact finder could infer that W.J. posted her TikTok videos with the intent to incite third parties to harass and threaten A.C.  See Commonwealth v. Johnson, 470 Mass. 300, 309 (2014) ("Where the sole purpose of the defendants' speech was to further their endeavor to intentionally harass the [victims], such speech is not protected by the First Amendment").  Again, we conclude the answer is no.

---

[10] A "pinned" comment is one that is positioned at the top of the comment post to ensure that it is the first comment that users will see when they view the post.

6

As noted, when a case concerning a harassment prevention order under c. 258E "involves speech, it must fall 'within [a] constitutionally unprotected category of speech." Petriello v. Indresano, 87 Mass. App. Ct. 438, 446 (2015), quoting Johnson, 470 Mass. at 311. Those categories have generally been limited "to two: 'fighting words' and 'true threats.'" Van Liew, 474 Mass. at 37, quoting O'Brien v. Borowski, 461 Mass. 415, 425 (2012). Neither category readily applies in this case. However, a third category of unprotected speech is appropriate to consider in this case: speech integral to criminal conduct.[11] See Petriello, supra at 447 (speech at issue there could not reasonably be considered "integral to criminal conduct" to support c. 258E order).

In Johnson, the Supreme Judicial Court held the evidence sufficient to support a conviction of harassment under G. L. c. 265, § 43A (a), where the defendants had created false

_____

[11] "'Harassment' is defined in G. L. c. 258E, § 1, in several ways, and a plaintiff who proves any one of the various forms of harassment qualifies for an order prohibiting the harassment." A.S.R., 92 Mass. App. Ct. at 274. A second definition of civil harassment under c. 258E, as is relevant here, is "an act that . . . constitutes a violation of section . . . 43A of chapter 265," the criminal harassment statute. G. L. c. 258E, § 1, second definition of harassment, subpart (B). We have stated that an "analysis of criminal harassment . . . also applies to civil harassment, when the civil harassment alleged consists of acts that constitute a violation of G. L. c. 265, § 43A." A.S.R., 92 Mass. App. Ct. at 279.

7

advertisements on Craigslist,[12] "luring numerous strangers and prompting incessant late-night telephone calls to [the victims'] home." 470 Mass. at 309. The court deemed the defendants' speech to be "integral to criminal conduct," a "long-standing category [of speech] that is constitutionally unprotected." See id. at 310-311. In its analysis, concluding in part that the "directed at" prong of the criminal harassment statute had been met, the court reasoned that "the Craigslist postings were the equivalent of the defendants recruiting others to harass the victims" and thus "[t]he causation link [was] satisfied." Id. at 312-313.

Here, by contrast, too large of a causal gap exists between W.J.'s TikTok posts and the acts of third parties to evince the requisite intent and, in turn, remove W.J.'s posts from the realm of protected speech. See Tison v. Arizona, 481 U.S. 137, 150 (1987) ("[t]raditionally, 'one intends certain consequences when he desires that his acts cause those consequences or knows that those consequences are substantially certain to result from his acts'" [citation omitted]). The record does not reflect that W.J. knew that third parties were harassing A.C. directly or threatening her with physical harm or damage to property when

_____

[12] "Craigslist is a classified advertisements website." Commonwealth v. Boger, 486 Mass. 358, 359 n.2 (2020).

8

she posted her TikTok videos.[13]  While W.J. may have reasonably expected her TikTok posts to influence some viewers to steer clear of A.C's business, the evidence simply does not support that she intended third parties to harass or threaten A.C., and that she did so willfully and maliciously.  See O'Brien, 461 Mass. at 420 ("Both civil and criminal harassment require proof of three or more acts of wilful and malicious conduct aimed at a specific person").

Rather, the third-party conduct at issue appears to have been the result of what began as relatively innocuous TikTok posts, made as part of a petty dispute between a business owner and a disgruntled customer, that subsequently "went viral" on social media and took on a life of their own.  See United States v. Osinger, 753 F.3d 939, 954 (9th Cir. 2014) ("If a defendant is doing nothing but exercising a right of free speech, without engaging in any non-speech conduct, the exception for speech integral to criminal conduct shouldn't apply").  See also State v. Billings, 217 Conn. App. 1, 28-30 (2022), and cases cited

---

[13] It was not until W.J.'s fifth and final TikTok video that she described a discussion she had with the detective from the Boston Police Department, detailing some of the allegations against her, and shared images of the police report that A.C. had filed.  The report contained a vague reference to A.C. receiving numerous threats online and on social media in regard to her business.  The remaining allegations of threatening conduct contained in the police report appear to be alleged to have come directly from W.J.

9

("for the speech integral to criminal conduct exception to apply, the speech in question must, at a minimum, be _integral_ to criminal conduct other than protected speech").

In short, because the evidence does not support that the defendant committed three acts of harassment within the meaning of c. 258E, the plaintiff has failed to meet her burden to sustain the issuance of a harassment prevention order.  We therefore remand the matter to the Boston Municipal Court for entry of an order vacating and setting aside the now-expired May 2, 2022, harassment prevention order, and for further actions required by G. L. c. 258E, § 9.  See _F.K._, 481 Mass. at 335.

So ordered.

By the Court (Wolohojian, Singh & Hand, JJ.[14]),

_Joseph F. Stanton_
Clerk

Entered: August 28, 2023.

---

[14] The panelists are listed in order of seniority.