NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1339

C.A.

vs.

G.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Pursuant to G. L. c. 258E, the plaintiff, C.A., obtained an ex parte harassment prevention order against the defendant, G.S. Following a two-party hearing, a District Court judge permanently extended the order (extension order).  The defendant now appeals from the ex parte and extension orders.  The defendant is not entitled to review of the ex parte order because that order has been superseded by the extension order. See C.R.S. v. J.M.S., 92 Mass. App. Ct. 561, 563 (2017).  We conclude that the evidence supported the issuance of the extension order but that the judge erred in extending the order permanently.  We therefore vacate the extension order to the extent that it is permanent, affirm all other aspects of the

order, and remand to enable the judge to consider whether extension of the order is warranted.

Discussion. 1. Evidence of harassment. The complaint here generally alleged three acts of harassment. In addition to her affidavit and testimony at the hearing, the plaintiff presented sixty-two pages of Facebook posts made by the defendant. Neither the plaintiff nor the judge specified which acts presented by the evidence constituted harassment as defined by G. L. c. 258E, § 1. "[W]e consider whether the judge could find, by a preponderance of [this] evidence, together with all permissible inferences, that the defendant committed '[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse or damage to property.'" A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015), quoting G. L. c. 258E, § 1. To prevent chilling the defendant's constitutional rights to free expression, we further consider whether the online remarks posted by the defendant constitute "true threats" that include "direct threats of imminent physical harm" or "words or actions that —- taking into account the context in which they arise —- cause the victim to fear such harm now or in the future and evince intent on the part of the speaker or actor to cause such

2

fear." O'Brien v. Borowski, 461 Mass. 415, 425 (2012), abrogated on other grounds by Seney v. Morhy, 467 Mass. 58 (2014). Applying these standards to the evidence presented, the judge could find a sufficient basis for the protective order.

According to the plaintiff's affidavit and testimony, the extensive Facebook posts initially arose while the defendant and his ex-girlfriend engaged in litigation in the Probate and Family Court over the custody of their child. The plaintiff has been the ex-girlfriend's attorney in that litigation, and since 2018 the defendant has continually "expressed his dismay" about the litigation on social media. After the ex-girlfriend obtained a favorable decision in the custody dispute, the defendant's postings "escalated a bit" and then escalated again in the few months before the two-party hearing. The plaintiff became "concerned" about the escalation and threats and suffered "emotional distress." With the Probate and Family Court litigation ongoing, on August 2, 2023, the plaintiff filed her complaint for protection and obtained the ex parte order.

At the two-party hearing two weeks later on August 15, the plaintiff presented evidence of the escalating conduct. The plaintiff testified that the defendant posted online "veiled threats against [her] family," mentioned her children, and displayed photographs of her street, residence, and yard. She

3

further testified that he posted her date of birth and address, stated that she did not "deserve to breathe the air that we live in," and warned that if she "fuck[ed] with his family, he would fuck with [hers] and he would come after them." Exhibits offered by the plaintiff showed that the defendant posted on Facebook that the plaintiff "doesn't deserve the air here[,]" and he also wrote, "If you fuck with any of my family. You're going to get me. Your kids may be held accountable for your shit." Additional postings at other times pursued a similar theme: "be careful with what you wish for"; "[s]how me the picture of your house"; and "You'll end up like the guy in Dubai I caught." The defendant also reposted a photograph of the plaintiff's daughter that included positive comments about her television broadcasting career, but that was marked up in red; the defendant identified the broadcaster as "[the plaintiff's] daughter" in large letters, underlined the words "[s]he shoots & edits[,]" and drew a red arrow from the word "shoots" to the daughter's forehead. The defendant did not dispute any of the evidence presented and asserted that "he has a First Amendment right to speak."

Based on our review of the entirety of the record, see Yasmin Y. v. Queshon Q., 101 Mass. App. Ct. 252, 256 (2022), we conclude that each of the postings described above could

4

constitute true threats that enabled the judge to find at least three distinct acts of willful and malicious conduct directed at the plaintiff and intended to cause, and did in fact cause, fear and intimidation. G. L. c. 258B, § 1. "[T]aking into account the context" of the contentious child custody litigation, O'Brien, 461 Mass. at 425, a common theme in each of the defendant's remarks that we have identified is that the defendant "envisaged violent harm befalling" the plaintiff or her children if she continued her representation of the ex-girlfriend. Counterman v. Colorado, 600 U.S. 66, 70 (2023). The threats, aimed at the plaintiff, were willful and malicious where they served the dual purpose of exacting "revenge" on the plaintiff for her legal work as well as expressing "hostility" to engender fear and discourage the continuing representation of the ex-girlfriend in the Probate and Family Court. See G. L. c. 258E, § 1. Given the emotional backdrop of the ongoing child custody litigation and the escalating nature of the remarks that triggered the plaintiff to seek court protection, the judge could have concluded, based on a preponderance of the evidence, that the defendant's postings constituted true threats that caused the plaintiff to fear harm "now or in the future" and evinced an intent by the defendant "to cause such fear." O'Brien, supra. See Counterman, supra at 73 (defendant must

5

have some subjective "understanding of his statements' threatening character").  In the absence of an abuse of discretion or an error of law, "we will not substitute our judgment" for that of the judge who weighed the evidence at the hearing.  C.O. v. M.M., 442 Mass. 648, 655 (2004), quoting Commonwealth v. Boucher, 438 Mass. 274, 276 (2002).

We disagree with several contentions raised by the defendant on appeal.  The absence of findings of fact by the judge does not constitute "reversible error."  See Yasmin Y., 101 Mass. App. Ct. at 256 (specific findings not required where reviewing court may discern reasonable basis for order).  While the defendant now offers more innocuous or prosaic interpretations for some of his remarks, "use of ambiguous language does not preclude a statement from being a threat" (citation omitted).  O'Brien, 461 Mass. at 424.  Indeed, threats may be "veiled or explicit" (citation omitted).  Id.  Veiled threats can be particularly useful to a perpetrator because the victim understands the message while leaving room for a fig leaf of deniability.  Also, the plaintiff was not required to prove "explicitly threatening language" that identified the precise intended physical harm (citation omitted).  Id.  See Commonwealth v. Chou, 433 Mass. 229, 230, 236-237 (2001) (true threat where defendant produced missing person flyer bearing

6

former girlfriend's photograph); <u>J.C.</u> v. <u>J.H.</u> 92 Mass. App. Ct. 224, 228 (2017) (true threat where ex-boyfriend sent text message to ex-girlfriend warning "this would 'end badly'").

2. <u>Duration of order</u>. Following the first two-party hearing, "[a]ny relief granted by the court shall not extend for a period exceeding 1 year." G. L. c. 258E, § 3 (<u>d</u>). At the conclusion of the two-party hearing here, however, the judge erred by issuing a permanent order. Therefore, the matter must be remanded to enable the judge to consider whether there exists a need to extend the order.

<u>Conclusion</u>. For the reasons set forth above, we vacate the August 15, 2023 harassment prevention order to the extent that it was entered as a permanent order. We otherwise affirm the order and remand for a new hearing and determination of whether grounds exist to extend the August 15 order. The order shall remain in effect pending that determination.

<u>So ordered</u>.

By the Court (Rubin, Shin & Hodgens, JJ.[1]),

<i>Paul Little</i>

Clerk

Entered: June 11, 2025.

_____

[1] The panelists are listed in order of seniority.